# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8398 | **DATE** | 9/4/2003 |
| **CASE TITLE** | | Tracy Holland vs. Jo Anne B. Barnhart | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and order: The court denies both parties' motion for summary judgment (16-1) but grants Holland's motion to remand. Because the ALJ's opinion contains a substantial number of omissions and errors that are material to the ALJ's disability determination, we remand to the agency for further proceedings. The in court hearing date of 9/11/03 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | SEP 0 5 2003 | 23 |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | 9/4/2003 | |
| | Copy to judge/magistrate judge. | | 03 SEP -5 AM 8:23 | date mailed notice | |
| GL | courtroom deputy's initials | | Date/time received in central Clerk's Office | GL mailing deputy initials | |

**DOCKETED**

SEP 0 5 2003

TRACY D. HOLLAND, )
)
Plaintiff, )
)
v. ) Case No. 02 C 8398
)
JO ANNE B. BARNHART, )
Commissioner of Social Security )
)
Defendant. )
)

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Claimant Tracy Holland ("Holland") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. In cross-motions for summary judgment, Holland asks the court to reverse the administrative law judge's ("ALJ") denial of benefits and the Commissioner asks the court to affirm that decision. Holland has alternatively moved to remand for further proceedings. For the reasons set forth below, the court denies both parties' motion for summary judgment but grants Holland's motion to remand.

## PROCEDURAL BACKGROUND

Holland applied for Disability Insurance Benefits on February 5, 2001, alleging she became disabled by diabetes and arthritis on December 8, 2000. Administrative Record ("Admin. R.") at 62-71. The Social Security Administration denied her application initially and upon reconsideration. Holland then requested review by an ALJ.

On June 6, 2002, the ALJ conducted a hearing. Holland was represented by a non-attorney. The ALJ issued a written decision on July 12, 2002, finding Holland not disabled. Holland filed an appeal

to the Social Security Appeals Council which denied Holland's request for review, thereby making the ALJ's determination the final decision of the Commissioner. Admin. R. at 3. Holland then filed a complaint requesting judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

At the time of the administrative hearing, Holland was 33 years old, 5'10" and weighed 282 pounds. Admin. R. at 194. She has completed high school and two years of college. Holland last worked in December, 2000, as an ultrasound assistant and prior to that she held numerous short-term jobs, including a certified nursing assistant, corrections officer, insurance sales representative, and teaching assistant. Admin. R. at 95-97.

## 1. Holland's Testimony

Holland testified that she stopped working on December 8, 2000, because she frequently got sick, her blood sugar was constantly elevated, and her legs were swelling and becoming painful. She explained that in 2000, she was diagnosed with diabetes. She was initially prescribed oral medication and later prescribed insulin to manage her diabetes. At the time of the hearing, Holland stated she was taking ten prescription medications daily. She testified that she followed her physician's instructions regarding the management of her diabetes but experienced fatigue as a side effect of the medications. She explained her current symptoms are pain in the legs and arms, numbness in the fingers and feet, swelling, headaches, blurry vision, and fatigue. Holland testified that her physical problems were largely due to her weight and diabetes. She said the medication helps the pain "a very little." She also stated that her blood sugar did not decrease significantly as a result of her doctor's efforts. The morning of the hearing, Holland stated her blood sugar count was 315. She explained she is forgetful at times and she experiences blurry vision when her blood sugar is high.

During a typical day, Holland performs few household chores and she stated she is unable to cook or drive. Holland testified that she often tries to sit up with her children but on some days she lays in bed all day because she does not feel like getting up. She explained that her aunt helps her take care of her children. Holland's husband, brother, and mother also have assisted her. She stated she sleeps periodically throughout the day and feels she needs to lie down constantly. Holland testified she is being treated for depression and is currently taking Prozac.

Holland testified she attempts to exercise but the pain in her legs forces her to stop. She further testified that she tries to attend church twice a month but usually stays home to watch movies and receive visitors. She stated the furthest distance she walked in the last month was on the morning of the hearing, which involved walking from the car to the courthouse. She explained pain limits her walking to a block at a time. When asked about her ability to stand for periods of time, Holland explained she is able to stand without pain for two to four minutes at a time, depending on whether she is able to shift her weight. She believed she could not sit for longer than 45 minutes to an hour because her knees will begin to hurt.

At the hearing, Holland was wearing a splint on her right wrist and stated her doctor prescribed it for carpal tunnel syndrome and to ease the pain and numbness she experiences in her hand. When questioned about her hand mobility, she stated she was able to make a fist with both hands and could hold a cup of coffee. She also testified she could probably lift five or six pounds. When asked to raise her arms, she explained she could not raise her arms parallel to the ground because of pain in her right shoulder.

## II.    Medical Evidence

Holland's treating physician, Albert Reynolds, M.D., ("Dr. Reynolds") has treated Holland since 1996. In a 2001 questionnaire from the Bureau of Disability Determination Services, Dr. Reynolds

3

reported he originally diagnosed Holland with type II diabetes mellitus in January of 2000. He also diagnosed Holland with obesity and he noted her compliance with treatment was poor. Dr. Reynolds reported he had found no visual or retinal complications and no evidence of neuropathy or vascular problems. He noted that Holland fatigued often but could perform sedentary tasks.

On February 6, 2001, Holland visited ophthalmologist, Robert Heindenry, M.D. Holland's eye examination was normal and he reported that there was no evidence of diabetic retinopathy. He also reported Holland had no work-related limitations due to her vision.

A state agency physician, C.F. Aquillo, M.D., reviewed the medical evidence for Holland on March 19, 2001. Dr. Aquillo reported that there was no evidence of neuropathy or complications, but poor compliance with treatment. Dr. Aquillo determined that Holland had no manipulative or visual limitations and retained the capacity for light work activity. Dr. Aquillo further opined that Holland could occasionally climb stairs, but never climb ladders, ropes, or scaffolds.

On May 24, and June 4, 2001, Dr. Arcot Dwarakanathan, M.D., evaluated Holland's diabetes. Holland complained of fatigue, weight gain and blurred vision. She also complained of constant knee pain and occasional nonexertional chest pain, shortness of breath, polyuria and muscle and joint pain. At the time, Holland was taking Glucophage, Glucotrol, Allegra, Lasix, and Vioxx. Physical examination revealed that Holland was 130 pounds over ideal body weight and her pedal pulses were diminished on both sides. Her eye examination was normal, her lungs were clear, and her cardiac examination was unremarkable. Dr. Dwarakanathan decreased her Glucophage, prescribed Glucotrol XL and recommended diet and exercise.

In June, 2001, Holland visited Dr. Reynolds complaining of right arm pain. She stated she often was unable to hold objects and frequently dropped them. Dr. Reynolds diagnosed tendinitis.

4

Another state agency physician, Young-Ja Kim, M.D., reconsidered Holland's medical evidence on August 9, 2001, because Holland alleged a worsening of conditions. Dr. Kim noted, however, that no additional information or medical records had been received. Dr. Kim reported that there was no evidence of diabetic retinopathy and determined Holland could perform light work. Dr. Kim acknowledged this assessment was in contrast to the recommendation of Dr. Reynolds, which indicated Holland fatigued often and could perform sedentary tasks. Dr. Kim explained Dr. Reynolds had not provided any objective evidence to support Holland's limitations.

On September 5, 2001, Holland went to the hospital reporting that she fell and hit her head. She thought she may have lost consciousness. Holland denied blurred vision and indicated she was relatively healthy. She displayed a full range of motion and her eye examination was normal. The CT of her head was negative, and no neuromuscular or neurologic defects were noted.

Dr. Reynolds' notes reveal that Holland called his office on September 26, 2001, complaining of numbness and tingling in her left arm and hand after failing to take her medicine that morning. She was advised to take her medication, and Holland reported improvement after doing so.

In early 2002, Holland continued to complain of pain in her legs and feet. Her glucose level was noted to be 313 on March 21, 2002, and she complained of aching "all over." Admin. R. at 152. In April, Holland complained of poor circulation in her legs and in May, 2002, she reported right leg and foot pain. At the request of the ALJ, following the administrative hearing, Dr. Reynolds completed a residual function capacity assessment form ("2002 RFC") in which he opined that Holland could stand for at least two hours and sit about six hours in an eight-hour work day, lift ten pounds frequently, but only perform limited pushing and pulling with her lower extremities. He also indicated that Holland had moderate to severe diabetic neuropathy, particularly in her feet and legs which caused numbness and loss of feeling in her lower extremities frequently. Dr. Reynolds noted that Holland was unable to feel

5

operating controls from time to time and had limitations in her far acuity, depth perception, and in her field of vision due to early stages of diabetic retinopathy. He noted that Holland should avoid concentrated exposure to wetness, noise, vibrations, fumes, odors, gases, poor ventilation, and hazards. He explained he recommended these environmental limitations because concentrated exposure "can aggravate patient's condition." Admin. R. at 185.

## III. The Vocational Expert's Testimony

Vocational expert ("VE"), Thomas Grzesik testified at the hearing. The ALJ asked the VE to consider a hypothetical individual of Holland's age, education, and work history, who was limited to sedentary work which did not require her to work around heights or moving machinery, and due to the possible effects of medication or pain required low degrees of concentration such as a "simple one, two step type of job" and allowed for her to change position at will. Admin. R. at 234. Given those limitations, the VE determined Holland could not return to any of her previous jobs. He explained her past employment was at the low end of semi-skilled work and he testified none of the skills would be transferable. As a result, the VE concluded that Holland could perform unskilled sedentary jobs and listed the positions in the region as a "sorter" (3,000 jobs), "mechanical assembler" (3,500 jobs), and a "hand packager" (3,500 jobs).

In a second hypothetical, the ALJ described an individual that required time to lay down every few hours. The VE stated that this would preclude the individual from full-time work.

## IV. The ALJ's Decision

After reviewing the medical evidence and the testimony of Holland and the VE, the ALJ determined that Holland was not disabled within the meaning of the Social Security Act. In reaching this conclusion, the ALJ conducted the five-step test as set forth in the Social Security Administration regulations. See 20 C.F.R. § 404.1520. First, the ALJ determined that Holland had not worked or

engaged in substantial gainful activity since the alleged onset date of her disability, December 8, 2000. He found her impaired by reason of diabetes mellitus and obesity and acknowledged her impairments were "severe." Next, he credited the conclusion of the state agency's medical consultant that Holland's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Given that determination, the ALJ was required then to determine Holland's residual functional capacity.

The ALJ discussed Holland's testimony concerning her symptoms and reported limitations. The ALJ found Holland "somewhat credible" in her statements, but found some of her "more extreme limitations" conflicted with those reported in Dr. Reynolds' 2002 RFC assessment. He provided as an example Dr. Reynolds' opinion that Holland can occasionally perform all types of postural maneuvers as compared to Holland's testimony that she had trouble bending and stooping because of pain in her knees. Moreover, the ALJ pointed to Holland's testimony that she could not stand for more than a couple of minutes at a time whereas Dr. Reynolds opined Holland can walk/stand at least two hours during an eight hour day. The ALJ also noted that Dr. Heidenry reported normal vision in February, 2001, but Holland complained of occasional blurry vision when her glucose levels were elevated. The ALJ concluded that "it would appear, then, that blurred vision, along with some of the numbness and tingling claimant reports, is a temporary manifestation associated with occasional noncompliance with her medication and/or diet regimens." Admin. R. at 12.

The ALJ determined that Dr. Reynolds' evaluation was entitled to considerable weight because it was not inconsistent with other evidence and was in "general accord" with the clinical signs and laboratory findings in the record. Nonetheless, the ALJ questioned Dr. Reynolds' environmental restrictions because Holland's impairments "should not be aggravated or affected in any way by fumes, noise, vibrations, temperature extremes and the like." Admin. R. at 12. Given these findings, the ALJ

7

concluded Holland was capable of performing a wide range of sedentary work which may involve occasionally standing and walking, lifting up to ten pounds at a time or carrying small items, and the ability to change positions at will. However, the ALJ determined that she should avoid heights and moving machinery because of her obesity and occasional numbness and tingling in her extremities. Given "her reported memory problems, and the fact she is currently being treated with Zoloft [Prozac]" the ALJ determined Holland should be restricted to simple one and two-step jobs that require a low degree of concentration. Admin. R. at 12. Although the ALJ indicated he considered Dr. Reynolds' restriction to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, the ALJ found "no reason to impose those additional limitations." *Id.* He explained that sedentary work does not usually involve such activities and only a complete restriction on stooping would erode the sedentary work occupational base.

The ALJ acknowledged that Holland's exertional limitations would not allow her to perform the full range of sedentary work and given the VE's testimony that Holland's past relevant jobs required a light level of exertion or more, the ALJ determined she was unable to perform her past relevant work. Based on the testimony of the VE, the ALJ further found that none of the skills Holland acquired in her past positions would transfer to jobs within her residual functional capacity. The ALJ did find, however, there were a significant number of jobs in the national economy which Holland could perform. Given the hypothetical individual's specific work restrictions, the VE testified that Holland would be able to adjust to other work in the region, such as a sorter, mechanical assembler or a hand packer. The ALJ credited this testimony and therefore concluded that Holland was not under a disability as defined by the Social Security Act, at any time through the date of the decision.

8

## STANDARD OF REVIEW

Under the Social Security Act, a reviewing court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Keppel v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The court may not substitute its own judgment for that of the Commissioner, reweigh evidence, resolve conflicts, or make credibility determinations. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

## DISCUSSION

Holland asks this court to reverse the ALJ's denial of benefits because the ALJ: (1) ignored relevant evidence; (2) failed to develop the record; (3) erred in his credibility determination; (4) failed to include all of Holland's limitations in his hypothetical to the VE; (5) failed to comply with the Commissioner's rulings regarding VE testimony; and (6) failed to specify time limitations for the sit/stand option.

## I.     Whether the ALJ Ignored Relevant Medical Evidence

A common assertion running through many of Holland's arguments for reversal is that the ALJ in this case impermissibly ignored several impairments from which Holland suffers, including the tingling and numbness in her hands, fatigue and drowsiness, subjective complaints of pain, and bladder dysfunction. The Seventh Circuit has stated that an ALJ "may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ need not provide a written evaluation of every piece of testimony and evidence submitted. *Id.* at 308. However, failing to consider an entire line of evidence "falls below the

9

minimal level of articulation required." *Id.* at 307. Moreover, ALJs "must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

To begin, Holland contends that the ALJ failed to address her bladder dysfunction. Holland argues that because incontinence constitutes an impairment under the SSA that must be considered in determining whether an applicant is disabled, the ALJ impermissibly ignored an entire line of evidence supporting disability. Holland points to *Golembiewski v. Barnhart*, to support her position. 322 F.3d 912, 917 (7th Cir. 2003). While *Golembiewski* made clear that incontinence constitutes an impairment under the SSA that must be considered in determining disability, the claimant in Golembiewski presented evidence that his incontinence problem was "quite disabling" and might be a "neurogenic bladder," thus necessitating a discussion of his impairment by the ALJ. *Id.* at 917. In this case, Holland submitted no evidence that incontinence interfered with her ability to work. While Dr. Dwarakanathan did note that Holland reported polyuria to him in 2001, he did not diagnose a bladder problem or initiate any sort of treatment. None of the other medical assessments submitted in the case mentioned incontinence and Holland did not testify to any incontinence problems or symptoms at the hearing. Moreover, Holland did not list as a cause for her disability any sort of incontinence problem. The dearth of recent medical records indicating such a problem and Holland's silence on the issue in both her application for benefits and at the hearing serve to minimize the relevance of her previous complaints of polyuria to her current claim for disability benefits. Moreover, the ALJ did address the complaints Holland made to Dr. Dwarakanathan about polyuria in his review of the medical evidence. Therefore, the ALJ's failure to thoroughly discuss Holland's previous complaint, given its absence from recent medical records and Holland's own testimony, is not reversible error.

However, Holland's assertions concerning the ALJ's treatment of other relevant evidence validly raises concerns about the completeness of the ALJ's decision in this case. First, Holland argues that the ALJ ignored the limitations posed by the numbness and tingling Holland experiences in her hands and impermissibly ignored an entire line of evidence that is contrary to the ruling by failing to discuss in his opinion that Holland was wearing a brace at the hearing allegedly in order to alleviate pain in her hands. Had the ALJ addressed her alleged hand limitations, Holland contends the number of jobs available for her to perform would have been reduced. Holland again cites *Golembiewski v. Barnhart*, in which the Seventh Circuit acknowledged that problems manipulating objects by hand reduces the number of jobs available to a claimant. 322 F.3d 912, 918 (7th Cir. 2003). Holland also argues the ALJ irrationally determined that Holland should avoid heights and moving machinery because of the occasional numbness and tingling she experiences in her extremities and due to her obesity.

In his decision, the ALJ did discuss the reports of numbness and tingling found in the medical records and addressed Holland's testimony concerning the numbness she experiences in her feet and fingers. The ALJ explained that it appeared to him that some of the numbness and tingling Holland reported was a "temporary manifestation associated with occasional noncompliance with her medication and/or diet regimes." Admin. R. at 12. He then determined that she should avoid heights and moving machinery because of her obesity and numbness and tingling in the extremities. The ALJ did not explain why heights or machinery should be avoided as a result of these impairments nor provide any support for his conclusion that noncompliance with medications would cause such an impairment. The ALJ points to no medical evidence or opinion in the record to justify his conclusion. By failing to "build an accurate and logical bridge" between the medical evidence and his conclusions, the ALJ has made meaningful review of these determinations difficult. *See Zurawski v. Halter*, 245 F.3d 881, 887-889 (7th Cir. 2001).

11

Moreover, in making his recommendation, the ALJ did not discuss Holland's treating physician's 2002 RFC which addresses Holland's limitations. Dr. Reynolds indicated under the "manipulative limitations" section that Holland had limited feeling in her skin receptors and that her diabetic neuropathy resulted in frequent numbness and loss of feeling in her lower extremities and results in her inability "to feel operating control from time to time." Admin. R. at 182. The ALJ also did not discuss the fact that at the hearing Holland was wearing a brace to allegedly alleviate pain or address her assertion that she had been diagnosed with carpal tunnel syndrome. While the ALJ certainly is not expected to address each piece of evidence in his written report, by failing even to discuss these reports of possible limitations in Holland's manipulative ability, the ALJ did not meet the minimal articulation required to allow a reviewing court to trace his reasoning. *See Herron v. Shalala*, 19 F.3d 329, 333-334 (7th Cir. 1994). If the ALJ discounted this evidence (rather than ignored it), he should have explained his reasons for doing so, because all we are provided with in his decision is the ALJ's determination that Dr. Reynolds' most recent evaluation is given considerable weight because it is "not inconsistent with the other substantial evidence of record." Admin. R. at 12. These omissions "preclude[] us from 'evaluat[ing]... whether substantial evidence existed to support the ALJ's finding.'" *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000) (quoting *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994)).

Additionally, Holland argues that the ALJ impermissibly made a medical judgment by choosing to ignore the portion of Dr. Reynolds' opinion that recommends certain environmental limitations for Holland's vocational profile. The ALJ did not ignore Dr. Reynolds' environmental limitations; indeed, he specifically addressed them in the body of his opinion. He did, however, choose to reject them. Specifically, in assessing the persuasiveness of Dr. Reynolds' assessments, the ALJ determined that Dr. Reynolds' evaluation was entitled to "considerable weight" but "questioned" his environmental restrictions "since diabetes and/or obesity should not be aggravated or affected in any way by fumes,

12

noise, vibrations, temperature extremes and the like." Admin. R. at 12. The Commissioner argues that it was reasonable for the ALJ to reject the portion of Dr. Reynolds' opinion concerning environmental limitations because that portion was not supported by the objective medical evidence and during her testimony, Holland did not list sensitivity to temperature as a side effect to any of her ailments.

An ALJ is entitled to consider one portion of a physician's report less significant than others. *See, e.g., Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). However, the fact that the parties debated the medical accuracy of such an assertion in the motions illustrates that Dr. Reynolds' assessment is not so obviously off the mark that it would be clear to any reviewer why he summarily dismissed it. Nor are the limitations so incredible that they obviate the need for the ALJ to adequately discuss the rationale behind his determination. The ALJ may have determined that Dr. Reynolds' restrictions deserved less weight because no other assessment lists such a restriction, because the conclusion was belied by some other piece of evidence or because Dr. Reynolds failed to provide an adequate explanation for his restrictions. Yet, there is no way to determine the sufficiency of his rationale because the ALJ failed to provide any medical evidence or authority for his conclusion. Without more, it is difficult for this court to conclude other than that the ALJ rejected the treating physician's limitations (whose assessment he determined was entitled to considerable weight) because they conflicted with the ALJ's own independent opinion as to the aggravating factors for diabetes. *Rohan* cautions, however, that ALJs shall not make their own independent medical findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *see also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("An ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record"). By failing to articulate why he questioned the most recent evidence of Holland's limitations submitted by her treating physician, we are unable to discern just how the ALJ made his determination regarding the

extent of Holland's limitations (aside from substituting his own judgment for that of the treating physician).

Holland further argues that in his decision, the ALJ ignored the fatigue and drowsiness she experiences. The Commissioner responds that the ALJ did accommodate Holland's fatigue by restricting her RFC to simple one and two step jobs that require a low degree of concentration. In his decision, the ALJ did acknowledge Holland's testimony about the side effects of her medications, which includes drowsiness, and he addressed that the medical records note Holland's reports of fatigue. Moreover, in the second hypothetical he posed to the VE, he asked about the job prospects of a hypothetical individual who needed to lay down every few hours for a period of one hour. Despite this inquiry, and contrary to the Commissioner's contention, however, the justification the ALJ provided in his written decision for requiring a job with a low degree of concentration was that Holland was being treated with an anti-depressant and reported problems with her memory, not because she experienced fatigue. If indeed fatigue factored into his analysis, the ALJ failed to articulate it. As stated above, although an ALJ need not evaluate in writing every piece of evidence in the record, *see Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), by failing to discuss Holland's fatigue and how it might affect her job performance precludes us from evaluating whether there is substantial evidence to support the ALJ's finding.

Finally, Holland argues that the ALJ ignored her subjective complaints of pain in her legs and hands. The ALJ did acknowledge that Holland's complaints of pain are noted in the medical records and discussed the testimony she gave concerning the pain she experiences and the limitations it causes her. In his opinion, the ALJ explained that he found Holland's reports of difficulty stooping and bending because of pain in her knees less credible because Dr. Reynolds determined she could occasionally perform all types of postural maneuvers. The Commissioner argues that the ALJ nonetheless

14

accommodated Holland's complaints of pain and swelling in her legs and difficulty stooping by limiting her to a restricted range of sedentary work that allowed her to change position at will. However, despite his discussion and accommodation of the pain and limitations Holland experiences in her knees, the ALJ's failure to consider Holland's reports and testimony of pain *in her arms and hands* remains unexplained and again precludes a meaningful review of the basis for the ALJ's decision.

In sum, because the ALJ's decision in its present form omits discussion of entire lines of relevant evidence and at times fails to adequately articulate why he discounted other material evidence, we lack a sufficient basis to review his disability determination. A remand is therefore in order so that the ALJ can make additional findings, address Holland's documented impairments fully, and provide the requisite analysis so that a reviewing court may trace his reasoning.

## II.      Duty to Develop the Record

An ALJ has an affirmative duty to develop a full and fair record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). When a claimant is unassisted by counsel, the ALJ has a duty "'scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts.'" *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991) (quoting *Smith v. Sec'y of Heath, Education, and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). Failure to fulfill this duty is cause for remand for the purpose of gathering additional evidence. *Id.* at 586.

Holland contends the ALJ erred by failing to fully and adequately develop the record. Specifically, Holland argues that neither the ALJ nor Holland's representative (a paralegal) questioned her in any detail at the hearing about her carpal tunnel syndrome or depression. Holland suggests the ALJ should have contacted Dr. Reynolds for further information regarding her impairments because Holland cannot diagnose her own conditions.

As an initial matter, how much evidence to gather "is a subject on which district courts must respect the [ALJ's] reasoned judgment." *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). In this case, the ALJ probed into the relevant areas, focusing his questioning on her medication, symptoms, daily activities and physical ability to perform various tasks. He employed the services of a VE. He permitted Holland's paralegal representative the opportunity to make an opening statement, elicit testimony from the claimant, and question the VE. Moreover, the ALJ left the record open to allow Holland to obtain any additional medical records, including an RFC from her treating physician.

Specific to Holland's depression, the ALJ questioned her about when she began taking Prozac, why she was prescribed an anti-depressant, and whether it helped relieve her symptoms. As for the carpal tunnel syndrome, the ALJ was initially unaware that Holland had been diagnosed with carpal tunnel syndrome because the diagnosis was not in the medical records or documented as part of Holland's claim for disability. It was only when the ALJ asked Holland to demonstrate her ability to use her hands that he noticed she was wearing a splint. He probed into the reason for the prescription (pain, numbness and carpal tunnel syndrome), how long she had been wearing it, whether it alleviated her symptoms, and probed into its effect on her ability to grasp objects. Holland contends the failure of the ALJ to elicit further information about her carpal tunnel syndrome was prejudicial because her inability to manipulate by hand reduces the jobs she can perform. Moreover, Holland asserts that the superficial questioning by the ALJ at the hearing was insufficient for the ALJ to be able to accurately assess the nature of her impairments. While the ALJ could have certainly probed further into the effects of each alleged impairment, it is important to note that Holland's treating physician, Dr. Reynolds, who apparently prescribed both the Prozac and the wrist splint, was asked to complete an RFC following the hearing. Nowhere in his June 2002 assessment are depression or carpal tunnel syndrome listed as impairments or suggested to in any way affect her functioning in the work place. We conclude that

16

Holland has not demonstrated she was prejudiced by some failure of the ALJ to develop the record. *See Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand"). Because this case is being remanded for other reasons, however, Holland has the opportunity to supplement the record with any medical evidence relevant to her limitations.

## III. Credibility Determination

Holland next challenges the ALJ's assessment of her credibility. The Seventh Circuit has made clear that an ALJ's credibility findings are entitled to deference and should not be disturbed on review unless they are patently wrong. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). "However, when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, appellate courts have greater freedom to review the ALJ's decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). Under the SSA regulations, an ALJ's determination of the credibility of the claimant is proper if it sets forth specific reasons for the finding supported by evidence and is "sufficiently specific" to make clear to reviewers the weight accorded to the claimant and the reasons for that weight. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Here, the ALJ found Holland somewhat credible but noted conflicts between her testimony at the hearing and the limitations suggested in Dr. Reynolds' 2002 RFC. In his decision, the ALJ provided specific reasons for his credibility determination and, given the deference we must afford an ALJ's credibility determinations, this court cannot say that the ALJ's determination is lacking such support so as to make it "patently wrong." Indeed, this court recognizes that the ALJ is in the best position to observe witnesses and that credibility determinations often involve "inarticulable elements." *Herron*, 19 F.3d at 335. Although the reasons provided by the ALJ to justify his credibility determination are not patently wrong, the court does find the inconsistencies the ALJ uses to support his determination unpersuasive.

For instance, the first conflict the ALJ noted was that Holland testified that she cannot stand for more than a couple minutes at a time, whereas Dr. Reynolds checked the box on the RFC form that said she can "stand and/or walk (with normal breaks) for a total of -- at least two hours in an 8-hour workday." Admin. R. at 112. Notwithstanding the fact that Dr. Reynolds was confined to the language of the RFC form, these two assessments simply are not mutually exclusive. In an eight hour workday, it is possible for Holland to stand only a couple minutes at a time, but still be able to stand and/or walk for a total of two hours during the workday. Even allowing for normal breaks would accommodate her requirements. However, the ALJ did not provide further explanation for his belief that this apparent conflict demonstrates Holland's lack of credibility and his failure to do so constitutes error. *See, e.g.,* *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) (finding error where the ALJ did not provide any explanation as to why the claimant's activities which included walking six blocks and performing chores were inconsistent with the treating physician's opinion that claimant required limitations on standing and walking).

The ALJ also determined Holland was not credible because she testified that she experiences blurry vision when her blood sugar is elevated whereas Dr. Heidenry reported normal vision as of February, 2001. Aside from the fact that there are more recent medical records assessing Holland's vision that the ALJ does not discuss, the ALJ concluded as part of his credibility determination that the blurred vision (along with some of the numbness and tingling) the claimant reports "is a temporary manifestation associated with occasional noncompliance with her medication and/or diet regimens." Admin. R. at 12. The ALJ provided no rationale for the analytical leap he made when he determined that the blurred vision of which Holland complains is due to noncompliance with medications. Although there are notations in the record that Holland's compliance is poor, the ALJ points to no evidence or medical opinion in the record to support his conclusion that blurred vision could result from failure to

18

take one of her medications. The Commissioner argues that Holland testified she was compliant with her doctor's instructions while Dr. Reynolds' notes document she was often noncompliant and thus the ALJ properly considered this in weighing Holland's credibility. The Commissioner also argues that on one occasion, Holland called Dr. Reynolds to complain of numbness and tingling in her arms and hands after failing to take her medications. If this one notation is the reason for the ALJ's conclusion, he failed to mention it. In his decision, the ALJ did not provide such a link for his reasoning and the Commissioner's *post hoc* rationalizations are insufficient to cure the deficiencies in his decision. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ"). Again, the ALJ has failed to provide a rational bridge for his reasoning. On remand, the ALJ must use the opportunity to better articulate the grounds for his credibility determination.

The ALJ also determined that Holland was not credible because she estimated that she could probably lift five or six pounds, whereas Dr. Reynolds checked the box that she could occasionally lift or carry at least ten pounds. Another conflict the ALJ listed between Holland and the 2002 RFC was that Holland testified that she had difficulty bending and stooping due to pain in her knees, whereas Dr. Reynolds noted that Holland could occasionally perform all types of postural maneuvers. These literal inconsistencies appear from the cold record as differences in degree rather than persuasive justifications for an inference that Holland lacks credibility. Yet, they are not patently wrong and as such we must not disturb the ALJ's credibility determination.

## IV. Hypothetical Posed to the VE

Holland argues that the ALJ did not include all of her impairments in the hypothetical he posed to the VE, thus disregarding evidence favorable to her and resulting in an incomplete assessment by the VE of her capabilities. Holland asserts the ALJ failed to include her complaints of numbness and

19

tingling in her extremities and her inability to hold objects in the hypothetical posed to the VE. Holland contends the ALJ did acknowledge that she suffers from these impairments in his opinion, but did not list them in the hypothetical. Holland argues because problems manipulating objects by hand would likely reduce the number of jobs available to Holland, by ignoring these limitations, the VE suggested jobs that require significant use of the hands. Holland also contends the ALJ erroneously excluded Holland's visual limitations and sensitivity to temperature from the hypothetical, despite Holland's documented complaints in the record of blurred vision, Dr. Reynolds' notations that Holland suffers from the early stages of diabetic retinopathy, and the environmental limitations recommended by Dr. Reynolds in his 2002 RFC assessment form. Holland argues the ALJ must incorporate Dr. Reynolds' findings into the hypothetical or explain why he discounted them.

Hypothetical questions posed to VEs "ordinarily must include all the limitations that are supported by the medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). The deficiency here, however, is that the 2002 RFC assessment made by Dr. Reynolds was completed and submitted after the hearing; thus many of his limitations were not available for the ALJ at the time of the hearing and not included in the hypothetical posed to the VE. Given that the ALJ elicited incomplete testimony from the VE and it is unclear whether these additional limitations would affect his vocational profile, this case should be remanded so that the VE can provide an opinion that incorporates all limitations that are supported by the evidence in the record.

## V.    Limitations for the Sit/Stand Option

Holland also asserts that the ALJ erred by failing to specify exact time limitations for her sit/stand option. As support for her argument, Holland cites an Eastern District of Wisconsin case in which the ALJ required a sit/stand option but failed altogether to specify its frequency, which "is a crucial component in assessing a claimant's ability to work." *Castrejon v. Apfel*, 131 F.Supp.2d 1053,

20

57-58 (E.D. Wis. 2001). Here, the ALJ specified that Holland required a job that would allow a change of position at will. The ALJ stated as much to the VE when posing the hypothetical. This allowed the VE to accommodate such a limitation in his vocational profile.

**VI. Whether Jobs Listed by VE Conflicted with the Dictionary of Occupational Titles**

Finally, Holland argues that under SSR 00-4p, the ALJ had the duty to ask the VE about whether the testimony he provided conflicts with the information contained in the Dictionary of Occupational Titles ("DOT") but failed to do so on the record. She points out that the jobs the VE suggested: sorter; hand packer; and mechanical assembler are not in the DOT. SSR 00-4p states that the ALJ "has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. The Commissioner responds that *Donahue v. Barnhart* requires such an inquiry only if a claimant questions the VE's foundation or reasoning at the hearing or a conflict is identified by the claimant and brought to the ALJ's attention. 279 F.3d 441, 445-7 (7th Cir. 2002). In *Donahue*, the court acknowledged that SSR 00-4p was not directly applicable to the case before it because the ruling went into effect after the ALJ conducted the hearing. In contrast, the hearing in this case took place well after the December 4, 2000 effective date of SSR 00-4p. We need not interpret SSR 00-4p in the context of this case at this time because the issue may not arise on remand.

**CONCLUSION**

Because the ALJ's opinion contains a substantial number of omissions and errors that are material to the ALJ's disability determination, we remand to the agency for further proceedings. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated _____9/4/03_____